UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, )<br>　　　　Plaintiff, )<br> )<br>v. )<br> )<br>**ALFREDO MANUEL DE** )<br>**VENGOECHEA-MENDEZ** )<br>　　　　a.k.a. "El Patron" )<br>　　　　a.k.a. "Feyo" )<br> )<br>**LUIS ANTONIO VALENZUELA-** )<br>**SIERRA** )<br>　　a.k.a. "Lucho" )<br>　　a.k.a. "Mi Tonto" )<br> )<br>**EBLIN RAFAEL RAMIREZ-DIAZ** )<br>　　a.k.a. "Rafa" )<br> )<br>　　　　Defendants. )<br> ) | CRIMINAL NO. 05-341 (RMU) |

**GOVERNMENT'S MOTION TO EXCLUDE TIME UNDER THE
SPEEDY TRIAL ACT AND DECLARE THE CASE COMPLEX
AND PROPOSED ORDER**

I.   <u>INTRODUCTION</u>

The United States, by and through its attorney, Patrick H. Hearn, Trial Attorney, Narcotic and Dangerous Drug Section, United States Department of Justice, hereby respectfully requests this Court to declare this case complex and exclude time under the Speedy Trial Act, pursuant to 18 U.S.C. §§ 3161(h)(7), 3161(h)(8)(A), (B)(ii), (iv), from the calculation of the date by which defendants Alfredo Manuel De Vengoechea-Mendez, Luis Antonio Valenzuela-Sierra and Eblin Rafael Ramirez-Diaz must be tried.

1

## II.   PROCEDURAL BACKGROUND

On September 14, 2005, a grand jury in the District of Columbia returned a two count original indictment against defendants Alfredo Manuel De Vengoechea-Mendez (Vengoechea), Luis Antonio Valenzuela-Sierra (Valenzuela) and Eblin Rafael Ramirez-Diaz (Ramirez) charging them in Count One with conspiracy to manufacture and distribute cocaine knowing and intending it will be imported into the United States in violation of 21 U.S.C. § 959 and in Count Two with distribution of cocaine knowing and intending it will be imported into the United States in violation of 21 U.S.C. § 959.

In November 2005 the United States presented the Colombian government with the provisional arrest requests for Vengoechea, Valenzuela, Ramirez and the remaining four defendants named in the indictment.  All of the defendants were arrested in Colombia in December 2005 and have been held custody pending their extraditions to the United States. Vengoechea, Valenzuela, and Ramirez were extradited to the United States on September 22, 2006.  They made their initial appearances before Magistrate Judge Facciola on September 25, 2006.  Vengoechea, at his initial appearance waived his right to a detention hearing and agreed to his detention.  A detention hearing for Valenzuela and Ramirez was held on September 27, 2006, before Magistrate Judge Facciola.  At the conclusion of the hearing Magistrate Judge Facciola order the continued detention of Valezuela and Ramirez.  The case is currently scheduled for a status hearing before Judge Urbina on October 11, 2006.

Four co-defendants, Alvaro Antonio Padilla-Melendez, Marlon Guerrero-Roman, Jose Ricardo Martinez-Rubiano and Rafael Eduardo Ruiz-Alvear are in custody in Colombia awaiting

extradition to the United States. It is estimated that they will be extradited to the United States within the next two to three months.

### III. FACTUAL BACKGROUND

The indictment in this matter is the result of a continuing long term international criminal cocaine trafficking investigation involving the law enforcement agencies and prosecutor's offices of the United States and Colombia. The focus of the investigation are the cocaine trafficking activities originating in the North Coast area of Colombia. This prosecution concerns an international cocaine trafficking conspiracy involving multiple defendants and co-conspirators from Colombia. The conspiracy consists of individuals involved in large scale cocaine drug trafficking and has been operating since 2004. Evidence in this case includes, but is not limited to, seizures of cocaine and "go-fast" boats on international waters, surveillance, thousands of legally authorized wiretapped telephone conversations, spoken in Spanish and intercepted in Colombia, and cooperating/government witnesses.

This investigation, over the course of several years, has in Colombia, through the use of judicially authorized Colombian wiretaps, seizures of cocaine and "go-fast" boats, surveillance and cooperating/government witnesses, identified a cocaine trafficking organization. This cocaine trafficking organization was based in and around Santa Marta, Colombia was identified by law enforcement by the name "El Patron." Santa Marta is located on the North Coast of Colombia. The investigation determined that Vengoechea, Valenzuela, and Ramirez were members of the "El Patron" organization.

The "El Patron" organization would transport cocaine from laboratories in the Sierra Nevada Mountains of Northern Colombia through Colombia to the North Coast of Colombia.

Once at the North Coast the "El Patron" organization would then load onto "go-fast" boats cocaine shipments of more than one thousand kilograms intending and knowing the cocaine shipment was bound for delivery in the United States. After loading the cocaine shipment, the boats would leave their locations along the North Coast of Colombia for northern destinations in Central America and Mexico. The cocaine loads taken to Central America and Mexico are received by other drug trafficking organizations and shipped to the United States.

  The investigation of the "El Patron" drug trafficking organization began in October 2004. From October 2004 through April 2005, judicially authorized telephone intercepts of the defendants and others revealed that the organization had sent out a number of vessels, loaded with cocaine, from the north coast of Colombia. None of those vessels were intercepted. During April 2005, the judicially authorized telephone intercepts of conversations between the defendants revealed that the organization was preparing to send out one or more vessels, loaded with cocaine, from the north coast of Colombia. Additional, telephone call intercepts between the defendants revealed that the boats, loaded with cocaine, had left the north coast of Colombian on or around April 15, 2005. On April 16, 2005, the United States Coast Guard intercepted on of the boats loaded with cocaine. 2,340 kilograms of cocaine were found on board the boat and seized by the United States Coast Guard. Subsequent, intercepted telephone intercepts of conversations between the defendants revealed that the boat seized was the cocaine laden boat sent out by the organization on or about April 15, 2005.

  Based on the over one thousand telephone intercepts and hours of surveillance the investigation has been able to identify each of the defendants and their role within the organization. The investigation, through the same telephone intercepts and surveillance, has

been able to verify that it was the defendants who responsible for coordinating and sending the cocaine laden boat, which was seized on April 16, 2005, by the United States Coast Guard.

The investigation has shown that Alfredo Manuel De Vengoechea-Mendez is the head of the "El Patron" drug trafficking organization. He is responsible for ordering the cocaine laden boats to depart, or refusing to send the boats. He has authority to stop a boat, which has already departed and bring it back or order it to change its route. Specifically, Vengoechea participated in several intercepted telephone calls with other defendants during which he discussed the departure and subsequent seizure of the cocaine laden boat by the United States Coast Guard on April 16, 2005.

The investigation has shown that Luis Antonio Valenzuela Sierra is an assistant to co-defendant Jose Ricardo Martinez-Rubiano. Martinez is responsible for finding the owners of cocaine who want to use the services of the organization for transportation of the cocaine out of Colombia. If there is a seizure, he is responsible for meeting the owners of the cocaine and explaining what occurred to the cocaine load. He is also responsible for providing instructions to other individuals regarding the transfer of money for payments. Specifically, Martinez participated in several intercepted telephone calls with other defendants during which he discussed the departure and subsequent seizure of the cocaine laden boat by the United States Coast Guard on April 16, 2005. Valenzuela would also assist with the logistics of the boats and cocaine shipments. He provides co-defendant Rafael Eduardo Ruiz-Alvear and Vengoechea information on the preparation of the boats and is present when the boats are launched. Specifically, Valenzuela participated in several intercepted telephone calls with other defendants during which he discussed the departure and subsequent seizure of the cocaine laden boat by the

United States Coast Guard on April 16, 2005.

The investigation has shown that Eblin Rafael Ramirez-Diaz s responsible for obtaining information for the organization regarding the presence and location of Colombian and United States naval or coast guard ships. Specifically, Ramirez participated in several intercepted telephone calls with other defendants during which he discussed the departure and subsequent seizure of the cocaine laden boat by the United States Coast Guard on April 16, 2005.

IV.  INVESTIGATIVE BACKGROUND

This case involves the extraterritorial application of United States law. This case is the result of a investigation beginning in approximately 2000. The investigation of this case occurred in the United States, Colombia, and the Carribean Sea by Special Agents of the Drug Enforcement Administration (DEA) and by law enforcement authorities of Colombia working independently of or in cooperation with the DEA.

The evidence supporting the indictment was developed and gathered through various means. There is a significant amount of telephone wiretap intercepts by Colombian law enforcement authorities. The recordings of these intercepts will need to be provided by Colombian law enforcement authorities to the United States government. The Colombian government will need to review the recordings to determine which calls contain pertinent, relevant and discoverable conversations, which then can be provided to the government. The United States government will also review the recordings to determine their content and provide them to the defense. This process, which will take additional time, will help facilitate the case preparation for the defense. These conversations are in Spanish and for use as evidence will require translations to English.

Evidence was also developed through interviews with witnesses and cooperators. The majority of these interviews and documenting reports were conducted in Spanish. There are seizures of cocaine, associated with the defendants and the organizations, which occurred in Colombia and in international waters with the cooperation of the United States and Colombian authorities. These seizures resulted in the large number of reports, documents and evidence. In addition, there is law enforcement surveillance by Colombian authorities in Colombia. The result is hundreds if not thousands of pages of documents. A large number of the documents are in Spanish and will necessitate translations into English. Also, there are witnesses, both civilian and government, who do not live in the United States, but who will need to come to the United States for a trial and possibly any evidentiary hearings.

The discovery in this case will be time consuming and complicated by the fact there are numerous calls to be reviewed and transcribed, foreign language translations, international drug seizure and foreign evidence. All of these materials will have to be provided to and reviewed by defense counsel before decisions can be made about how to proceed with their clients' defenses, including whether to file pre-trial motions, whether to enter into plea negotiations and whether to proceed to trial. Pre-trial motions may be based, in large part, upon the discovery provided by the government. Defense counsel will have to review the substantial volume of evidence, including documents and records in order to determine what, if any, pre-trial motions are appropriate.

V.   ARGUMENT

A.   Introduction

Title 18, United States Code, Section 3161(h)(8)(A) allows the court to exclude a period

of delay from the Speedy Trial Act calculation if the Court finds "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." Section 3161(h)(8)(B) sets forth the factors the court may consider when determining whether to exclude time pursuant to Section 3161(h)(8)(A). Where the court finds that a case is,

> so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that is unreasonable to expect adequate preparation for pretrial proceedings or for the trial within the time limits established,

or that,

> failure to grant such a continuance in a case . . . not so unusual or complex . . . would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation . . . ,

the court may exclude such time as necessary to serve the ends of justice.

18 U.S.C. § 3161(h)(B)(ii), (iv).

B.   This Case Should be Excluded Under the Speedy Trial Act Due to Its Complex Nature.

This case is complex due to, the large number of defendants, the crimes charged in the indictment and the nature of the evidence supporting the charges in the instant indictment, all of which justifies an exclusion of time under 18 U.S.C. § 3161(h)(8)(A). Applying the factors set forth in Section 3161(h)(8)(B), courts have routinely excluded reasonable periods of time in cases similar in scale and complexity to the instant case. Based upon the number of defendants, the crimes charged in the indictment, the amount of evidence involved, the need for sufficient time to research, draft and file motions, and prepare transcripts and other evidence for trial, the United States submits that this case is sufficiently unusual and complex and that a reasonable time is necessary for the effective preparation by both the defense and the government to support the exclusion of time, pursuant to 18 U.S.C. §3161(h)(8)(A) and (B)(ii), (iv). Additional time

will necessarily be required for the defense counsel to adequately prepare by reviewing the evidence, determining the appropriate motions to be filed, if any, and preparing for trial. See United States v. Gambino, 59 F.3d 353 (2d Cir. 1995) (trial court has broad discretion to grant speedy trial exclusion based on complexity of the case when such factor complexity makes it necessary to prepare for fair trial); United States v. Clymer, 25 F.3d 824 (9th Cir. 1994) ("complex" finding made to exclude time for first continuance); United States v. Butz, 982 F.2d 1378 (9th Cir. 1993) (excludable time based on extra time needed to complete discovery, file pretrial motions and prepare defense in nine co-defendant drug conspiracy involving 29 separate charges). Indeed, courts have recognized that the necessity of gathering and producing a large number of documents increases the complexity of a case and can justify exclusion of time under the Speedy Trial Act. See United States v. Beech Nut Nutrition Corporation, 871 F.2d 1181, 1197-1198 (2d Cir.) (case in which government made available to defendants approximately 30,000 documents was "complex within the meaning of the Speedy Trial Act"), cert. denied, 493 U.S. 933 (1989).

      Findings of complexity and resulting exclusions of time have been based on the presence of a large amount of evidence gathered by means of court-authorized wiretaps. Production and review of wiretap evidence often take a substantial amount of time, justifying the exclusion of such time from the Speedy Trial Act calculation. See United States v. Gambino, 59 F.3d 353, 358 (2d Cir. 1995) (trial court excluded time under § 3161(h)(8)(A) because case involved "hundreds of hours of video and audio tape recordings tracking the structure of the criminal activities of the Gambino organization"), cert. denied, 517 U.S. 1187 (1996); Butz, supra, 982 F.2d at 1381 (exclusion of time justified in part because evidence of charged drug conspiracy was

in form of "hundreds of hours" of conversations intercepted pursuant to a Title III wiretap); United States. v. Ditommaso, 817 F.2d 201, 210 (2nd Cir. 1987) (case involving "hundreds of reels of [audio]tapes" found sufficiently complex to justify exclusion of time under §3161(h)(8)(A)).

The presence of multiple defendants in a drug trafficking conspiracy case has been frequently cited as the basis for exclusion of time. See Ditommaso, supra, 817 F.2d at 210 (2d Cir. 1987) ("we agree that this multi-defendant, international drug smuggling and money-laundering case was sufficiently complex to warrant excludable time"); United States v. Brooks, 697 F.2d 517 (3d Cir. 1982) (case declared complex that alleged a drug manufacturing and distributing conspiracy involving nine people, with four counts of substantive drug offenses involving various members of conspiracy, where not all defendants had secured counsel, and where discovery had not been completed); United States v. Fogarty, 692 F.2d 542, 546 (8th Cir. 1982) ("the complexity of the case, involving seven co-defendants and multiple overt acts occurring in seven states, outweighed the interests of the individual defendants" and justified exclusion of time under § 3161(h)(8)(A)), cert. denied, 460 U.S. 1040 (1983); United States v. Ambrosio, 898 F. Supp. 177, 192 (S.D.N.Y. 1995) (ends of justice exclusion justified by complexity of case, where indictment charged 17 defendants with large-scale drug conspiracy).

The particularized needs and requirements of international criminal prosecutions make these types of cases uniquely complex. The requirements of international protocols and treaties to obtain foreign evidence, foreign witnesses and foreign documents, which need to be translated, and the necessity for international travel, present additional hurdles for both the government and the defendant. See United States v. Kamer, 781 F.2d 1380 (9th Cir. 1986) (the exclusion of the

case from the speedy trial requirements for additional trial preparation was supported by a complex case that had numerous overseas documents, most of which were in the Dutch language, and many foreign witnesses); United States v. Al-Arian, 2003 W.L. 21403733 (M.D. Fla.) (a case involving a group of international criminals with 21,000 hours of recorded conversations in Arabic, hundreds of boxes of documentary evidence, and voluminous other foreign law enforcement materials was sufficiently complex to grant a continuance of 19 months).  See also, United States v. Strong, 608 F. Supp. 188 (E.D. Pa. 1985) (concluding the failure to grant an ends of justice delay as a complex case would deny the government needed evidence and time necessary for effective preparation in a complex case that sought evidence from Hong Kong and Singapore).

In this case, the interests of justice would be served by the scheduling of the trial date at a future date because of the complex nature of the prosecution. This case, which involves an international cocaine trafficking conspiracy, is sufficiently complex to justify speedy trial waiver based upon the complexity of the case.  Specifically, the indictment charges seven named defendants with a conspiracy beginning on or about October 28, 2004.  The indictment charges one conspiracy count and one substantive cocaine trafficking counts.  Furthermore, the proof in this case will require the government to prove multiple acts that occurred outside the District of Colombia, including, more significantly, acts committed outside of the United States

The investigation conducted in this case has generated thousands of recorded phone conversations, thousands of pages of both United States and Colombian police reports, as well as voluminous other physical and documentary evidence.  Many if not most of the documents are in Spanish.  Moreover, many of the government's witnesses reside outside the United States and

must be brought to this country to testify at trial. In addition, because the case involves the extraterritorial application of United States law and the prosecution of a multiple member international drug conspiracy, it may present novel questions of fact or law. The international and maritime nature of this case presents several other complex pretrial issues. These include issues of jurisdiction, arrest, post-arrest statements, and searches and seizures on the high seas and in foreign countries. While some of the issues which may arise may not be entirely novel, they will most certainly be formidable.

Accordingly, the government submits that the ends of justice would be served by a continuance and outweigh the best interests of the public and the defendant in a speedy trial. At this early stage of the trial proceedings, it is impossible to gauge how long it will take the parties to prepare for trial. Accordingly, the Government requests that the case be certified as complex and that the Court consider the setting of the time for trial at a future status hearing.

C.   The Time Until the Remaining Defendants Are Extradited From Colombia Should Be Excluded Under the Speedy Trial Act.

The Speedy Trial Act permits certain periods of time to be excluded from this seventy-day period. "The following periods of delay shall be excluded . . . in computing the time within which the trial of any such offense must commence." 18 U.S.C. § 3161(h). One specific exception excludes, "a reasonable period of delay when the defendant is joined for trial with a co-defendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(7). See United States v. Varella, 692 F.2d 1352, 1358 (11th Cir. 1982)(section 3161(h)(7) embodies Congress' recognition that, "the efficiency and economy of joint trials far outweighed the desirability of granting a severance where the criterion was simply

the passage of time"). Courts have relied upon this provision as a basis to exclude significant periods of time from the computation of a defendant's speedy trial calendar.

Courts have found that the exclusion of time from the Speedy Trial requirements while efforts are made to find and capture fugitive co-defendants are reasonable. In United States v. Franklin, the court excluded 134 days while police searched for a fugitive co-defendant was reasonable in order to permit a joint trial of the defendants in a drug conspiracy case. "The utility of a joint trial is particularly compelling here, as the defendants were charged with a single conspiracy so that the government could be expected to recite a single factual history, put on a single array of evidence, and call a single group of witnesses." 148 F.3d 451, 457 (5th Cir. 1998) See, United States v. Tobin, 840 F.2d 867 (11th Cir. 1988) (the exclusion of eight months and ten days based upon an unsuccessful effort to capture a fugitive co-defendant was reasonable); See also United States v. Register, 182 F.3d 820, 826-28 & n. 8 (11th Cir. 1999) (holding that a 38-month delay, while extraordinary, did not raise speedy trial concerns where the delay had resulted in part from the periodic joinder of defendants and the return of several superseding indictments).

Four co-defendants, Alvaro Antonio Padilla-Melendez, Marlon Guerrero-Roman, Jose Ricardo Martinez-Rubiano and Rafael Eduardo Ruiz-Alvear are in custody in Colombia awaiting extradition. They will likely be extradited to the United States within the next two to three months. Unlike the circumstances in the Franklin and Tobin cases, the absent co-defendants in this case is not a fugitive from justice whose time of capture cannot be predicted. Instead, these foure defendants are in the custody of another sovereign nation with whom the United States has an extradition treaty.

The facts present in this case clearly support the exclusion of time under the Speedy Trial Act. The defendants in this case are charged in a single conspiracy and interests of judicial economy strongly weigh in favor of a single trial. Indeed, the facts and evidence that would be presented in a trial for these defendants are so intertwined that the same evidence would be presented for each defendant if they were to have separate trials. The burden of multiple trials in this case would be significant, particularly because of the costs associated with bringing law enforcement witnesses from Colombia to the United States. More important, interests of witness safety would be severely complicated if the cooperating individuals in this case are forced to testify at multiple trials. Accordingly, this court should rely upon the specific statutory exclusion of time to toll the running of the Speedy Trial Act until the co-defendants arrive in the District of Columbia in order to avoid needless separate trials.

## CONCLUSION

For all of the foregoing reasons, the Government respectfully requests that this motion be granted.

Respectfully submitted
KEN BLANCO, Chief
Narcotics and Dangerous Drug Section


  /s/
Patrick H. Hearn
Trial Attorney
Narcotics and Dangerous Drug Section
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C.  20005
(202) 305-7606

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 11th day of October, 2006, a copy of the foregoing Government's Motion to Declare this Case Complex and Exclude Time under the Speedy Trial Act and Proposed Order was served electronically on counsel of record.

                                                          /s/
                                                     Patrick H. Hearn